```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEBRASKA
```

| | | |
|---|---|---|
| SCHULTZ DOUGLASS FARMS L.L.C., | ) ) ) | |
| Plaintiff, | ) ) | 4:08CV3222 |
| v. | ) ) ) | |
| XC NETWORKS, LTD., a Texas Corporation, CORBAN COMMUNICATIONS, INC., a Texas Corporation, CORBAN TOWERS, INC., a Texas Corporation, 360 NETWORKS, INC., a Colorado Corporation, and JOHN DOE, INC., an unidentified corporation, | ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |

After this case was removed from the County Court of Seward County, Nebraska, (see filing no. 1), defendant XC Networks, LTD ("XC") filed a motion to transfer the case to the United States District Court for the Northern District of Texas, Dallas Division. Filing No. 4. XC claims the bankruptcy court of that district has jurisdiction because it presided over the bankruptcy proceedings filed by defendants Corban Communications, Inc., ("CCI") and Corban Towers, Inc. ("CTI"), (collectively referred to as "Corban").[1] The plaintiff, Schultz Douglass Farms L.L.C. ("Schultz Douglass") did not respond to the motion to transfer.

The court, however, questioned whether any federal jurisdiction existed because, although defendant Corban is

---

[1]From the record before this court, the primary bankruptcy case at issue is <u>In Re: International Communications Group, Inc. and In Re: Corban Towers, Inc.</u>, Case No. 05-38729-HDH-11 (jointly administered), the Honorable Harlan D. Hale, United States Bankruptcy Judge, presiding.

identified in the caption of this lawsuit, the plaintiff's complaint actually seeks no recovery from Corban.  Rather, the complaint claims XC owes rent from April 2006 to present for its use of "[a] plot of land 585' x 585' (7.86 acres more or less) located in the NW corner of the NW1/4 of the NW1/4 of Section 14, T. 9 N., R. 2 E., of the 6th P.M." in Seward County, Nebraska," (the "tower plot") owned by the plaintiff, and John Doe, Inc. owes rent for the use of this land from October 2004 to April 2006.  See, filing no. 1-5 (plaintiff's complaint).  The court ordered XC to first prove subject matter jurisdiction existed before the court would address the motion to transfer.

XC has filed a brief and evidence in support of removal. Filing Nos. 12 & 13.  The plaintiff's response opposes XC's claim of federal jurisdiction and argues that the court should not transfer this case to the Texas bankruptcy forum.

For the reasons discussed below, the court finds that federal jurisdiction does exist.  The court further finds that the case should be transferred to the United States District Court for the Northern District of Texas, Dallas Division.

FACTS OF RECORD

In June of 1983, Western Tele-Communications, Inc., Nevada entered into a ten-year lease to rent the tower plot from landowners Pearl M. Schultz, Lillian E. Schultz, and Edward T. Douglas for placement of a telecommunications facility and tower. Filing No. 13-3.  The lease contained ten-year options to extend, and based on the record before this court, was extended to June 30, 2003.[2]  Filing No. 13-4, ¶ 1.

---

[2]This court's understanding of the facts is limited to the record filed in this forum.  The court has not reviewed any of

2

Western Tele-Communications, Inc., Nevada later transferred its interests in the tower plot lease to Western Tele-Communications, Inc., Delaware, (later known as National Digital Television Center). Effective January 2, 1997, the tower plot lease was held by Western Tele-Communications, Inc., Colorado. Filing No. 13-4. There are no filings of record indicating Western Tele-Communications, Inc., Colorado changed its name or assigned its interest in plaintiff's tower plot lease to any other entity. Accordingly, based on this court's record, Western Tele-Communications, Inc., Colorado had a lease agreement with the plaintiff for the use of the tower plot, and this lease agreement expired on June 30, 2003.

CCI and CTI filed chapter 11 bankruptcy proceedings in the Northern District of Texas in March of 2004. The exhibit C attached to each of their bankruptcy petitions stated Corban owned or was responsible for towers erected throughout the United States, but it did not specifically list the tower plots leased, including the plot owned by the plaintiff. Filing Nos. 13-5 & 13-6.

An involuntary bankruptcy petition was filed against International Communications Group, Inc. ("ICG"), doing business as Corban Networks, Inc., and formerly known as Corban Towers, Inc., on August 3, 2005. Filing No. 13-7, ¶ 2; filing no. 13-9; filing no. 13-10, p. 2. CTI filed a voluntary petition for bankruptcy relief on November 17, 2005. Filing No. 13-7, ¶ 3;

---

the filings of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Both XC and the plaintiff were given the opportunity to expand the record and clarify the source of any leasehold interests held. Even so, there remain "gaps" in the sequence of events regarding the origin and expiration of the leasehold interests at issue.

filing no. 13-10. CCI had acquired the assets of ICG and CTI during the course of CCI's 2004 bankruptcy proceedings. Filing No. 13-7, ¶ 6. Those assets include 315 microwave towers located throughout the United States. Filing No. 13-7, ¶ 7.

Edward T. Douglass was listed as a creditor in CTI's 2005 bankruptcy proceeding; Rod and Jeannene Douglass, and Lillian E. and Pearl M. Shultz were not. Filing No. 6-7, p. 17. Edward, Rod and Jeannene Douglass, and Pearl M. and Lillian E. Schultz jointly owned the tower plot land in 2005, and did not form the plaintiff, Schultz Douglass, or transfer their ownership of the tower plot to the plaintiff until 2007. Filing No. 1-5, ¶¶ 11-12, 15-16.

The Texas bankruptcy court entered an order to jointly administer the CTI and ICG bankruptcy proceedings on December 6, 2005. Filing No. 13-7, ¶ 4; filing no. 13-12. On March 24, 2006, ICG and CTI filed a notice designating their unexpired leases and requesting the bankruptcy court's approval to sell those leases to TSBL Management, Inc, doing business as North American Wireless Partners ("NAWP"). Filing No. 13-13. A lease agreement for site "15025" near Beaver Crossing, Nebraska and entered into on June 1, 1973 with Edward T. Douglass, and Pearl M. and Lillian E. Schultz was among the unexpired lease agreements to be sold to NAWP, subject to court approval. Corban's designation of unexpired leases states FCC tower # 1032163 is located on site 15025. Plaintiff's complaint refers to the site where FCC tower # 1032163 is located. Accordingly, site 15025 is the tower plot at issue in plaintiff's complaint. See filing no. 1-5, ¶¶ 20-21; filing no. 13-13, p. 9.

CTI's designation of unexpired leases included listing of "cure amounts" owed. The listing indicated a cure amount of

4

$750.00 was owned to Edward T. Douglass for site 15025, with nothing owed to Pearl M. and Lillian E. Schultz. Rod and Jeannene Douglass were not identified in this listing. The purchase agreement between ICG/CTI and NAWP, which identified site 15025 owned by Edward T. Douglass and Pearl M. And Lillian E Schultz as included within the lease agreements purchased by NAWP, (filing no. 13-14, pp. 34 & 39; filing no. 13-17, pp. 29, 33-34), was approved by the bankruptcy court on April 3, 2006. Filing No. 13-15. The bankruptcy court's order approving the sale states that court "shall retain exclusive jurisdiction over all matters arising from or related to the interpretation and implementation" of it order. Filing No. 13-15, p. 10, ¶ K. The lease agreement ICG/CTI claimed to have regarding plaintiff's tower plot was assigned to NAWP on April 13, 2006. On April 24, 2006, NAWP changed its name to XC Networks, LTD. Filing No. 13-16.

## DISCUSSION

XC claims federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1334 because plaintiff's suit arises from or relates to the implementation of the Texas bankruptcy court's order approving the April 2006 sale of Corban's leases to XC. The plaintiff responds that it has tried to determine who the tenant for the tower plot was from October 2004 through April 2006, but it has persistently been given the run around rather than answers. The plaintiff states it does not know if Corban held the lease it listed for sale to XC during the bankruptcy proceedings. The plaintiff further states that the plaintiff (and its owners) never received a suggestion of bankruptcy or creditor notices for the Chapter 11 bankruptcy proceedings filed by Corban in the Texas court. Filing No. 15.

5

Although clearly relevant to the issue of subject matter jurisdiction, XC has produced no document explaining how a lease held by Western Tele-Communications, Inc., Colorado and expiring on June 30, 2003 became an unexpired lease held by Corban in 2005 and available for sale to XC in April 2006. If Corban did not have an unexpired lease with the plaintiff to use the tower plot from October 2004 through April 2006, then Corban may not be the proper defendant as to plaintiff's claim for unpaid rent for that time frame and, as such, the Corban bankruptcy may have no relationship to plaintiff's claim for pre-April 2006 rents owed. However, if Corban did hold an unexpired lease to use the tower plot from October 2004 through April 2006, then as to the pre-April 2006 rents allegedly owed, an issue remains concerning whether the plaintiff received adequate notice of the Corban bankruptcy proceedings such that it is now bound by the outcome of those proceedings.

As to the rents allegedly owed for post-April 2006 use of the tower plot, if Corban did not have unexpired lease rights to that property on April 2006, it could not transfer such rights to XP as part of the sale approved by the bankruptcy court. The court notes, however, that based on the evidence currently before this court, XP has, since April 2006, claimed entitlement to use and has used the plaintiff's tower plot for its tower. The plaintiff alleges XP has paid no rent since April 2006. Irrespective of the Corban bankruptcy proceedings, or what XP actually received from Corban within those proceedings, XP is not permitted to use the plaintiff's land for free merely because it purportedly obtained leasehold rights as part of a bankruptcy sale. As to the post-2006 time frame, the issue is what theory of recovery governs the plaintiff's claim against XP. Specifically, did XP receive a valid lease from Corban and has XP

breached that lease, or do plaintiff's damage claims rest on non-contractual or quasi-contract theories of recovery?

The issues outlined above are clearly related to the bankruptcy proceedings and Corban's transfer of assets within those proceedings. A nexus exists between the plaintiff's civil action and the Corban's bankruptcy proceeding such that federal jurisdiction exists over plaintiff's complaint. [Integrated Health Services of Cliff Manor, Inc. v. THCI Co., LLC, 417 F.3d 953, 957 (8th Cir. 2005)](). Moreover, transferring the case to the United States District Court for the Northern District of Texas, Dallas Division for referral to its bankruptcy court will promote judicial economy by putting the related matters raised by plaintiff's complaint before the same court handling Corban's bankruptcy action. The defendant's motion to transfer will be granted. [Id.](); [28 U.S.C. § 1412](). See also, [Shared Network Users Group, Inc. v. WorldCom Technologies, Inc., 309 B.R. 446, 452 (E.D. Pa. 2004)]()(transferring a removed state case under [28 U.S.C. 1412](), holding "the overwhelmingly significant factor, outweighing all others, is the judicial economy to be achieved in having the entire controversy decided in one forum.").

IT THEREFORE HEREBY IS ORDERED:

1) The motion to transfer filed by defendant XC Networks, LTD, (filing no. 4), is granted, and this case shall be transferred to United States District Court for the Northern District of Texas, Dallas Division.

2) The Clerk is directed to transmit the file in this action to the United States District Court for the Northern District of Texas, Dallas Division.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge